## S02A0765. DIXON v. THE STATE.
### (564 SE2d 198)

CARLEY, Justice.

Charles Dixon was convicted of the malice murder of Sundie Cutter and the trial court sentenced him to life imprisonment. Thereafter, Dixon filed a motion for new trial, which the trial court denied, and he appeals.[1]

1. Appellant and the victim had a lengthy and tempestuous relationship. Shortly before the homicide, she ordered him out of the apartment they shared. On the night before she died, Ms. Cutter met another man and invited him to come home with her. He left in the early morning hours. At some point shortly thereafter, the murderer entered the victim's bedroom, possibly by breaking the window. When discovered, the victim's body was partially wrapped in a bedspread stained with a mixture of her and Dixon's blood. She was strangled with a telephone cord. Two young children, one of whom was the son of Dixon and Ms. Cutter, witnessed the murder. They identified Dixon as the killer. While incarcerated, appellant made an incriminating admission to a fellow inmate, acknowledging that he strangled Ms. Cutter because she had been with another man.

Construed most strongly in favor of the verdict, the evidence is sufficient to authorize a rational trier of fact to find proof beyond a reasonable doubt that Dixon was guilty of the malice murder of Ms. Cutter. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends that evidence of his prior difficulties with the victim was inadmissible because of a lack of similarity to the murder. Unlike similar transactions, prior difficulties do not implicate " 'independent acts or occurrences, but are connected acts or occurrences arising from the relationship between the same people

---

[1] The murder was committed on April 9, 1994. The grand jury indicted Dixon on February 17, 1999. The jury returned the guilty verdict on July 21, 2000 and, on the same day, the trial court entered a judgment of conviction and imposed the life sentence. Appellant filed a motion for new trial on August 1, 2000, which the trial court denied on November 27, 2001. He filed a notice of appeal on November 29, 2001, and the case was docketed in this Court on February 6, 2002. The appeal was submitted for decision on April 1, 2002.

involved in the prosecution and are related and connected by such nexus. (Cits.)' [Cit.]" *Temple v. State*, 238 Ga. App. 146, 147 (2) (517 SE2d 850) (1999). Thus, the admissibility of evidence of prior difficulties does not depend upon a showing of similarity to the crime for which the accused is being tried.

> [E]vidence of the defendant's prior acts toward the victim, be it a prior assault, a quarrel, or a threat, is admissible when the defendant is accused of a criminal act against the victim, as the prior acts are evidence of the relationship between the victim and the defendant and may show the defendant's motive, intent, and bent of mind in committing the act against the victim which results in the charges for which the defendant is being prosecuted. [Cits.]

*Wall v. State*, 269 Ga. 506, 509 (2) (500 SE2d 904) (1998). The trial court correctly admitted evidence of the series of past events as illustrative of Dixon's abusive course of conduct towards Ms. Cutter, which culminated in the murder.

3. Declarations made by the victim to investigating officers regarding her prior difficulties with appellant were admissible under the necessity exception to the hearsay rule. *Ward v. State*, 271 Ga. 648, 649 (2) (520 SE2d 205) (1999); *Quijano v. State*, 271 Ga. 181, 184 (4) (516 SE2d 81) (1999). Also, statements made to the policemen by other witnesses to the abusive events would be admissible under the res gestae exception. *Nasworthy v. State*, 169 Ga. App. 603 (2) (314 SE2d 446) (1984). Most of those declarations were described in police reports, and the trial court properly allowed the officers to refer to those records to refresh their memories or, if they could not, to swear positively therefrom. OCGA § 24-9-69; *Mincey v. State*, 257 Ga. 500, 504 (6) (360 SE2d 578) (1987).

4. The murder occurred in 1994, but appellant was not indicted until 1999 and he was not tried until 2000. During that period, several items of physical evidence, including the murder weapon, were disposed of in the normal course of business. Dixon contends that this destruction of the evidence was a violation of his due process rights. However, the failure to preserve evidence does not constitute a constitutional violation, unless it is shown that the missing evidence was potentially useful to the defense and was destroyed in bad faith on the part of the police. *Arizona v. Youngblood*, 488 U. S. 51 (109 SC 333, 102 LE2d 281) (1988). Appellant did not show that the evidence had any exculpatory value or that, if it did, the custodians acted in bad faith by disposing of it. *Terrell v. State*, 271 Ga. 783, 787 (6) (523 SE2d 294) (1999). Therefore, this enumeration is without merit.

5. Appellant contends that trial counsel was ineffective. To prevail on that claim, he must show a deficiency in his attorney's performance which was prejudicial to the defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

Dixon first contends that his lawyer failed to impeach several of the State's witnesses by introducing the recorded statements they gave to investigating officers. Whether to impeach prosecution witnesses and how to do so are tactical decisions. See generally *Austin v. Carter*, 248 Ga. 775, 779 (2) (c) (285 SE2d 542) (1982). According to counsel, he decided that it was best not to introduce the witnesses' actual prior recorded statements despite some inconsistencies with their trial testimony, because those statements were otherwise consistent with their in-court identification of the defendant as the murderer. Under these circumstances, the lawyer elected to cross-examine the witnesses about the discrepancies, thereby avoiding corroboration of the inculpatory aspects of their testimony which would result from the introduction of the statements in their entirety. Thus, contrary to Dixon's argument, his defense counsel followed a valid impeachment strategy.

Appellant also urges ineffectiveness in the failure to raise the destruction of physical evidence as a ground for dismissal. However, that would not have been successful, as nothing indicated that prosecutorial bad faith was a factor in the decision to dispose of the items. See *Terrell v. State*, supra. Although defense counsel did not raise any hearsay objection to introduction of all of the police reports, this too was proper since such an objection would be meritless. OCGA § 24-9-69; *Ward v. State*, supra; *Nasworthy v. State*, supra. Accordingly, there was not any prejudicial deficiency in counsel's performance which would authorize reversal of the conviction.

*Judgment affirmed. All the Justices concur, except Fletcher, C. J., who concurs in Divisions 1, 2, 4, 5, and in the judgment.*

DECIDED MAY 28, 2002.

*Zipperer & Lorberbaum, Eric R. Gotwalt,* for appellant.
*Spencer Lawton, Jr., District Attorney, Lori T. Loncon, Assistant District Attorney, Thurbert E. Baker, Attorney General, Wylencia H. Monroe, Assistant Attorney General,* for appellee.